Date signed June 07, 2012



PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| TATIANA YEFIMOVA | : | Case No. 08-20049PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| LYUDMILA RYBAKOVA | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 08-0819PM |
| | : | |
| TATIANA YEFIMOVA | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**MEMORANDUM OF DECISION**

Before the court is a six count adversary proceeding seeking the denial of Debtor's discharge and, in the alternative, should she be unsuccessful in all of the five counts objecting to discharge, that the debt owed to her be determined to be excepted from Debtor's discharge by virtue of 11 U.S.C. § 523(a)(2)(A). The Complaint alleges that the discharge should be denied pursuant to 11 U.S.C. § § 727(a) (2), (a)(3), (a)(4), (a)(5) and (a)(6). These sections provide in pertinent part:

> **§ 727. Discharge**
>
> (a) The court shall grant the debtor a discharge, unless--
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

        (A) property of the debtor, within one year before the date of the filing of the petition; or
        (B) property of the estate, after the date of the filing of the petition;
    (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
    (4) the debtor knowingly and fraudulently, in or in connection with the case--
        (A) made a false oath or account;
        (B) presented or used a false claim;
        (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
        (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
    (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;
    (6) the debtor has refused, in the case--
        (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify . . .

This opinion will concentrate on the allegations made under Sections (a)(3) relating to Debtor's failure to preserve information relating to her financial affairs and (a)(4)(A) relating to the allegations of false oaths and accounts. The (a)(5) allegation relating to disposition of cash receipts of a corporation of which she was a minority shareholder was not supported by the evidence, and the (a)(6) allegation relating to Debtor's failure to pay a $375.00 sanction imposed upon her by this court's Order entered December 14, 2011, cannot form the basis for denial of her discharge. The court imposed a sanction but did not order her to pay the Plaintiff that sum, and in any event that Order survives the outcome of this case no matter who prevails. Section (a)(6) generally deals situations where there is willful disobedience of court orders to turn over property and the like that result in harm to the creditors or contempt of court. That is not the case here. *Cf. Smith v. Jordan*, 521 F.3d 430 (CA4 2008).

    Debtor filed this case under Chapter 7 on August 6, 2008. Her Statement of Financial Affairs showed income from employment of $11,000.00 in 2006 and $11,460.00 in 2007. Her

Schedule F showed a total of $241,287.92 of unsecured nonpriority claims.

The Complaint and testimony were presented in blunderbuss fashion.  Seldom has the court heard an action with less focus on the issues involved .  The trial was marked by an incredible amount of irrelevant and repetitious arguments, testimony and exhibits.  The principals and witnesses were members of a local community of Russian emigrès who came to this country in the mid 90's.  Since that time, for the most part, they have not acquired fluency in the English language.  The interpreters' task was made difficult  by the tendency of most witnesses to make speeches in their answers to questions put to them.

The testimony of Mark Kaminsky is illustrative of the confusing nature of the evidence presented in this controversy.  He testified that he loaned Debtor $52,000.00 and that he was repaid $15,000.00 of this amount.  Loan advances were evidenced by checks aggregating $50,000.00 (Pl Ex #54) and $2,000.00 in cash.  His testimony described these funds as both an investment and a loan.  Similarly, in his affidavit (which troubles the court in view of his lack of facility with the English language), filed as Exhibit #23 in the Pre-Trial Memoranda filed by former counsel for the Plaintiff at Docket #104, Mr. Kaminsky likewise stated that he loaned Debtor $52,000.00 between the years 2003 and 2010, with the last advance being made in 2007.  He testified as well that he was paid $500.00 a month for a period of time.  When confronted with Defendant's Exhibit #6, a copy of a $20,000.00 check payable to him dated January 27, 2004, he stated that this payment had nothing to do with loan that he made.

Similarly, the testimony of Debtor's partner Dina Galitsky was particularly puzzling in that at one point she owned 80% of the business, although she spent no significant time at it and seemed to contribute only $2,150.00 to it, consisting of paying some notary fees and paying for some air conditioner repairs.

Debtor was a principal in a flower shop originally known as Wheaton Flowers, Inc. ("WFI"), d/b/a Bennett's House of Flowers, that was located at 11230 Triangle Lane, Wheaton, Maryland.  The tax return (Pl Ex #2) reflected that Debtor owned 51% of this subchapter S corporation.  That entity filed a bankruptcy case under Chapter 7 on September 8, 2005.  The bankruptcy petition and schedules for WFT were signed under oath by Debtor as the corporation president.[1]  The lawyer for the corporation was Vladimir I. Gvozd, who filed this bankruptcy

---

[1] Adding to the confusion presented in this case is the fact that Debtor's Schedule F of creditors holding unsecured nonpriority claims included three CitiBank entries, one for Chase Bank, one for Bank of America, and three Wachovia Bank entries, that were all claims listed on

case for the Debtor. Debtor then was associated with D & T Flowers, Inc., that was formed in January 2006 and operated from the same premises. That entity's tax return (Pl Ex #4) shows that Debtor held a 20% interest in the successor entity.

The Debtor's Schedules were confusing and most likely incomplete. The court found her testimony unworthy of belief in many respects and mirrored the lack of probity of her Schedules and Statement of Financial Affairs. The court does not accept Debtor's explanation that she was relying entirely upon her lawyer and that all defects in her filing should be attributed to him. Her testimony that she lived in the flower shop that was not equipped with a shower was unbelievable and tendered in an effort to show that her ex-husband was the owner of the valuable Lomosov and Gzhel porcelain located in their residence. She originally scheduled the value of a 2003 Dodge Caravan van that she bought two months before filing for $6,500.00 at $0.00. Two months later she increased the value to $1,200.00 and, following an accident in 2011, she received $6,000.00 from her insurance carrier when the vehicle was found to be a total loss. Similarly, when the case was filed she did not list the Plaintiff as a creditor. Nine days after filing the petition she signed a memorandum of understanding acknowledging that she had received $60,000.00 from the Plaintiff, and executed six promissory notes each in the amount of $10,000.00. These documents were all acknowledged before a notary public. Thereafter, Debtor amended her Schedule F to add the Plaintiff as a creditor to whom she owed $60,000.00. The court does not believe her testimony that there was no consideration for these notes as she had repaid all that she had borrowed from Plaintiff. The Debtor testified that when she sold her interest in D & T Flowers on September 24, 2009, all that she received was $8.00, thus justifying her $0.00 valuation of her interest in the shop. Yet Plaintiff's Exhibit #34 shows that she received more than $15,000.00 from the flower shop following the closing. There was no explanation for this discrepancy.

The advice of counsel to submit false or incomplete information is not a defense where the falsity of the schedules is readily apparent. Debtor cannot play ostrich and bury her head in the sand and disclaim all responsibility for the statements she made under oath. *In re Tully*, 818 F.2d 106, 111 (CA1 1987). As explained in the case of *In re Giquinto*, 388 B.R. 152 (BC E.D.

---

the WFI Schedule F and some in the very same amounts shown in the prior filing. However, while there is said to be personal liability for these claims, the Debtor was not listed as a codebtor on the WFI Schedule H. This case was filed by the lawyer who filed this case for the Debtor, and she signed the corporate petition and schedules under oath as president.

Pa. 2008):

> Courts may consider the debtor's education, business experience, and reliance on counsel ..., but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel. Furthermore, a debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he made under oath.

*In re Spitko*, 357 B.R. 272, 313–14 (BC.E.D.Pa.2006).

The submission of accurate schedules of assets and debts is a cornerstone of the bankruptcy process that requires a full, candid, and complete disclosure by debtors of their financial affairs. *In re Searles*, 317 B.R. 368, 378 (BAP9 2004).

Debtor kept no records of the thousands of dollars borrowed by her. She testified that as she repaid what she borrowed, she forgot about it. Plaintiff's Exhibit #18 showed that she received $71,800.00 from various individuals. There were no records of the payment of these persons or the use to which she put this money. To account for the absence of business records, Debtor explained that her business associate Dina Galitsky kept the records and all of these were turned over to the buyers of the business at the time of settlement. When presented with Plaintiff's Exhibit #28, a copy of a check signed by her payable to Oppeheimer Funds in the sum of $4,500.00, she had utterly no explanation for it. The check was issued for an account that the account number had been redacted, presumably by Plaintiff s counsel. While no mutual fund accounts were listed on Debtor's Schedules, the most likely inference is that the payment was from an account held by her. This was one of the few of her transactions evidenced by a check, as her transactions with Grigori Chernyakov, Naum Chernyak, Leyva Gurvich, Vladimir Veytman and others were all unrecorded cash transactions.

The court finds that the Debtor's discharge must be denied and that the Plaintiff met her burden of proof as to Counts I and IV of the Complaint relating to false oaths and the failure to keep records. The Plaintiff need only succeed on one of the grounds alleged because the provisions of §727(a) are in the disjunctive, The court finds that Plaintiff met her burden of proof by the required preponderance of evidence standard. *See Farouki v. Emirates International Ltd.*, 14 F.3d 244, 249-240 (CA4 1994).

The court finds as a fact that the Debtor failed to list all her creditors, listed as creditors entities to whom she did not owe money, misstated the value of her automobile and her ownership interest in the flower shop and that these failures were material. The court finds these

material misstatements were all under oath, that she knew them to be false, and that she made them wilfully and with the intent to defraud her creditors and to mislead the Trustee. *See Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 250-251 (CA4 1987).

"[A] party objecting to a bankruptcy discharge petition on this basis must make an initial showing that (1) the debtor failed to keep and preserve adequate financial records, and (2) such a failure makes it impossible to ascertain the debtor's financial condition. *See* § 727(a)(3)*; see also Meridian Bank v. Alten,* 958 F.2d 1226, 1232 (3d Cir.1992)." *In re French*, 499 F.3d 345, 354 (CA4 2007). In discussing the standard required of debtors to preserve information, that court pointed out at page 355:

> The essential requirement of § 727(a)(3) under these authorities is, as the Third Circuit has explained, that the records "sufficiently identify the transactions so that intelligent inquiry can be made of them. The test is whether there is available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." Meridian Bank, 958 F.2d at 1230 (internal quotation marks omitted); see also Schifano, 378 F.3d at 69 (concluding that records preserved must reasonably allow court and parties to ascertain accurate picture of debtor's financial affairs); Noroian, 422 F.2d at 1094 ("All that is required is that a competent accountant should be able to determine from such books and records the financial condition of the bankrupt."); In re Greene, 202 B.R. 68, 71 (Bankr.D.Md.1996) ("The appropriate inquiry is whether the debtor kept records which would allow creditors to ascertain the debtor's present financial condition and business transactions over a reasonable period of time. The Bankruptcy Code does not demand perfection, but it does require debtors to maintain records in a manner that is reasonable under the circumstances of the particular case." (internal citations omitted)); In re Baxter, 96 B.R. 58, 60 (Bankr.E.D.Va.1989) ("A debtor's records must at least reasonably allow for the reconstruction of the debtor's financial condition to meet the requirements of the Bankruptcy Code." (internal quotation marks omitted)). We are content with the principle that a bankruptcy debtor is not required to maintain perfect records. A debtor is, however, obliged by the statute to preserve sufficient and adequate financial records to enable the court and the parties to reasonably ascertain an accurate picture of his financial affairs.
>
> Although the parties did not take issue with the foregoing principle, Peninsula makes two contentions on appeal concerning its applicability to the circumstances of French's discharge petition. First, Peninsula contends that it is entitled to summary judgment on its inadequate records claim because French was a sophisticated debtor and thus should be held to a higher standard. In the Bankruptcy Opinion, the bankruptcy court agreed on that point. The court then determined that, because it found French to be a sophisticated businessman, he should have better maintained his business records. Although the sophistication

>factor may be important in assessing a denial of discharge under § 727(a)(3), whether French was a sophisticated debtor was itself a contested fact, and such a finding does not, in any event, justify an award of summary judgment to Peninsula. Instead, as the Third Circuit explained, the level of a debtor's sophistication is simply another factor that a trier of fact may take into account in determining whether a debtor maintained sufficient records. See Meridian Bank, 958 F.2d at 1231 (concluding that Bankruptcy Code requires trier of fact to make determination on adequacy of debtor's records and his justification for not maintaining certain records based on all circumstances, including "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice" (internal quotation marks omitted)).

*See In re Burrik*, 459 B.R. 881, 890. (E.D. Pa. 2011).

In *French*, the court held that the matter of sophistication of the debtor was an issue of fact that could not be decided by summary judgment. Here, Debtor was a sophisticated business person, and, for the most part, the quarter of a million dollars of debts that she listed were debts incurred in connection with her business affairs. While the Bankruptcy Code does not require an impeccable system of bookkeeping, the Debtor's records must sufficiently identify her transactions so that intelligent inquiry can be made of them. Interested parties must be able to obtain a complete and accurate picture of Debtor's financial affairs. *See In re Schifano*, 378 F.3d 60, 69-70 (CA1 2004).

A considerable amount of trial time was wasted with in trying the issues related to Count II brought ostensibly under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2) provides:

>(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>>(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
>>>(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>>(B) use of a statement in writing -
>>>>(i) that is materially false;
>>>>(ii) respecting the debtor's or an insider's financial condition;
>>>>(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>>>(iv) that the debtor caused to be made or published

with intent to deceive . . . .

Debtor argued that she did not owe any money to the Plaintiff at the time of filing of this bankruptcy case. However, in her amended Schedule F filed October 2, 2008, she stated that she owed the Plaintiff $60,000.00 on account of a business loan with a date two days after the filing of the filing of the Petition. Her explanation of reasoning explaining why she signed the notes evidencing the transaction was not worthy of belief. The court finds that she recognized that she owed Plaintiff some money, although there is insufficient evidence in the record to establish even a rough estimate of the amount. The Schedule F was never amended further. "Filing the schedule in a proceeding in bankruptcy is an ex parte act on the part of the bankrupt, and in that proceeding is a solemn admission which, unless corrected, binds him." *Sovran Bank, N.A. v. Anderson*, 743 F.2d 223, 225 n. 1 (CA4 1984) (quoting *Horner v. Hamner*, 249 F. 134, 137 (CA4 1918)). *See also Norritech v. Geonex Corp.*, 204 B.R. 684, 688 (D. Md.1997).

On the other hand, the allegation of the Plaintiff that the Debtor stated "that D&T Flowers, Inc's business provides a 'security' for the loans" adds nothing to her Complaint. Oral statements of financial condition are outside the scope of § 523(a)(2)(B) and may not form the basis of an action brought under § 523(a)(2)(A). Blackwell v. Dabney, 702 F.2d 490, 492 (CA4 1983). The Complaint further alleged that Debtor requested a loan from Plaintiff to pay for her son's legal expenses, but the funds were not used for that purpose. However, there was no testimony offered to support these allegations. Inasmuch as Plaintiff has not sustained her burden of proof by a preponderance of evidence under 11 U.S.C. § 523(a)(2), judgment will be entered in favor of Defendant and Count II of the Complaint will be dismissed. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Strack*, 524 F.3d. 493, 497 (CA4 2008).

cc:
Mark Kotlarsky, Esq., 7400 Heartleaf Circle, Laurel, MD 20707
Dmitry D. Balannik, Esq., 5101 Wisconsin Ave. NW, Suite 302, Washington DC 20016
Marvin Liss, Esq., 5101 Wisconsin Ave. NW, Suite 302, Washington DC 20016

**End of Memorandum**